IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FILED**
MAR 29 2013
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **SAMSUNG CELLULAR PHONE Model# SPH-M270 WITH PHONE NUMBER 618-570-2978** CURRENTLY LOCATED AT **DRUG ENFORCEMENT ADMINISTRATION FAIRVIEW HEIGHTS RESIDENT OFFICE, FAIRVIEW HEIGHTS, IL.** | Case No. 13-mj-3146-DGW<br><br>FILED UNDER SEAL |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **CHAD NORD**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a **Task Force Officer** with the **Drug Enforcement Agency** and have been for approximately six months. Prior to being a Task Force Officer, I was a member of the St. Clair County Drug Tactical Unit for approximately nine months. I have been in law enforcement for approximately five years. I have participated in numerous narcotics investigations involving the manufacture, transportation, distribution, and sale of controlled substances, as well as the methods of laundering the proceeds of these illegal activities. During the course of my law enforcement experience, I have participated in several complex

investigations of drug-trafficking organizations dealing in cocaine, marijuana, heroin, methamphetamine and other controlled substances. I am familiar with and have used normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, search and arrest warrants, informants, pen registers, precision location information, confidential sources, and undercover agents. My specialized training has included, but is not limited to investigation of the manufacture, possession and distribution of controlled substance listed within the Controlled Substance Act, executing search and arrest warrants involving drug offenses, gathering drug and non-drug evidence, undercover assignments, and supervision and utilization of informants.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

The property to be searched is a SAMSUNG cellular phone Model#SPH-M270 with phone number 618-570-2978 hereinafter the "Device." The Device is currently located at **DRUG ENFORCEMENT ADMINISTRATION FAIRVIEW HEIGHTS RESIDENT OFFICE, FAIRVIEW HEIGHTS, IL.**

4. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

5. On March 27, 2013, at approximately 5:30 p.m., agents from the Fairview Heights Resident Office (FHRO) learned that "ROYCE" was travelling from Chicago, IL to the

2

Metropolitan St. Louis area. Agents eventually identified ROYCE as Royce SPANN and learned that he was travelling from Chicago to St. Louis via Amtrak. Agents learned that the train was to arrive in St. Louis at approximately 10:13 p.m. after stopping in Alton, Illinois.

6. At approximately 10:45 p.m., agents from the FHRO established surveillance around the Amtrak Station at 430 South 15th Street, St. Louis, Missouri. SA Robert Eisenbarger, SA Jeremy Henning, SA Michael Rehg, and TFO Jose Cerna established a surveillance point inside the train station observing the off-loading passengers.

7. At approximately 11:05 p.m., SA Rehg, and SA Eisenbarger observed SPANN exiting the train station. SPANN was wearing a black jacket, carrying a black back and red shopping bag. SA Rehg, witnessed by SA Eisenbarger approached SPANN on the street in front of the train station. SA Rehg identified himself to SPANN as a DEA agent and asked to speak with him. SPANN acknowledged SA Rehg's request and spoke briefly to SA Rehg. SA Rehg asked SPANN to step onto the sidewalk out of the way of traffic so that they could talk. SPANN agreed and stepped onto the sidewalk. SA Rehg asked SPANN his name. SPANN told SA Rehg his last name was SPANN. SPANN also provided a first name, but SA Rehg could not understand his reply. At approximately the same time, SPANN quickly dropped his backpack, shopping bag and coat and ran. SA Rehg, SA Eisenbarger and others gave chase as SPANN ran west on Poplar Street towards 18th Street. Before reaching 18th Street, SPANN leaped from the elevated section of Poplar Street to the parking lot below. SPANN jumped another fence and disappeared running south under I-64.

3

8. TFO Cerna and SA Jeremy Henning recovered the back-pack, shopping bag and coat discarded by SPANN at the time he was approached by agents. TFO Cerna, witnessed by SA Henning searched the back-pack and located a plastic bag containing suspected heroin. TFO Cerna also located various documents and medication bottle reflecting SPANN'S name, four (4) cellular telephones, and two bundles of United States currency totaling $10,000 inside the backpack. These items will be maintained by agents. These items were immediately turned over to SA Rehg, witnessed by TFO Chad Nord.

9. The Device is currently in the lawful possession of the **Drug Enforcement Administration (DEA).** It came into the **DEA's** possession when it was seized after Spann fled from agents in connection with an investigation into discovery of approximately 821 grams of suspected heroin in a backpack Spann dropped at the scene. Therefore, while the **DEA** might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

10. The Device is currently in storage at **DEA Fairview Heights RO, Fairview Heights, IL.** In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the **DEA**.

4

## TECHNICAL TERMS

11.  Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

5

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

12. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.samsung.com, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In

my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

14. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

       conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

16. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

17. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

18. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____
Chad Nord
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on March 29, 2013:

_____
DONALD G. WILKERSON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a **SAMSUNG** cellular phone Model#SPH-M270 with phone number 618-570-2978 hereinafter the "Device." The Device is currently located at DEA Fairview Heights RO, Fairview Heights, IL.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii) and Title 18, United States Code, Section 2, and involve **Royce R. Spann** since the activation of the device including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording **Royce R. Spann's** schedule or travel from **activation of the device** to the present;

   e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.